IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-807-M-BM

| | | |
|---|---|---|
| ANNA RHODES,<br><br>Plaintiff,<br><br>v.<br><br>SANTANDER CONSUMER USA, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **ORDER and MEMORANDUM AND RECOMMENDATION** |

This *pro se* case is before the court on the motion by plaintiff Anna Rhodes ("plaintiff") to proceed *in forma pauperis* [DE-2] pursuant to 28 U.S.C. § 1915(a)(1) and for a frivolity review pursuant to 28 U.S.C. § 1915(e)(2)(B). This matter is also before the court on plaintiff's motion for leave to manually file exhibit [DE-5]. The motions were referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1).

The court finds that plaintiff has demonstrated appropriate evidence of her inability to pay the required court costs, and the application to proceed *in forma pauperis* [DE-2] will be ALLOWED. Based on the court's frivolity review and for the reasons stated below, the undersigned RECOMMENDS that plaintiff's UDPTA claim related to Santander's disposal of her property ([DE-1] at 7-8) be DISMISSED WITHOUT PREJUDICE and that all of plaintiff's other claims [DE-1] be DISMISSED WITH PREJUDICE. Additionally for the reasons cited below, plaintiff's motion for leave to submit multimedia evidence [DE-5] is DENIED WITHOUT PREJUDICE.

## ORDER ON *IN FORMA PAUPERIS* MOTION

To qualify for *in forma pauperis* status, a person must show that she "cannot because of [her] poverty pay or give security for the costs . . . and still be able to provide [her]self and

dependents with the necessities of life." *See Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) (internal quotation marks omitted). Based on the information in the motion to proceed *in forma pauperis* [DE-2], the court finds that plaintiff has adequately demonstrated her inability to prepay the required court costs. Accordingly, plaintiff's motion to proceed *in forma pauperis* [DE-2] is therefore ALLOWED.

## MEMORANDUM AND RECOMMENDATION ON FRIVOLITY REVIEW

## I. BACKGROUND

### A. Plaintiff's allegations and claims

On December 12, 2025, plaintiff filed a complaint in this court alleging (i) federal law claims against Santander Consumer USA, Inc., ("Santander" or "defendant") under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, 15 U.S.C. § 1692 *et seq.*; and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*; and (ii) state law claims for unjust enrichment; constructive trust; accounting; N.C. Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. stat.§ 75-1.1; common law fraud; wrongful repossession; failure to provide notice of disposition; conversion; and declaratory judgment, 28 U.S.C. §§ 2201-2202. *See* [DE-1] at ¶¶ 26-68. Plaintiff's claims arise from plaintiff's purchase of a vehicle with financing provided by defendant, a vehicle which defendant subsequently repossessed and sold due to an alleged default on the loan. *See generally* [DE-1]. Plaintiff maintains that defendant misapplied or miscalculated the payments and credits to her account. *See id.* at 4.

Plaintiff alleges that on June 26, 2021, she purchased a 2018 Nissan Sentra (the "vehicle") financed through a Retail Installment Sales Contract (the "financing contract") with Santander. *See id.* at ¶ 10. On June 26, 2021, plaintiff also entered into a "mechanical protection plan – vehicle service agreement" (the "vehicle service warranty contract."). [DE-1-3] at 14. The monthly

payment under the financing contract was $464.62 starting on August 10, 2021. *See* [DE-1] at ¶ 10; [DE-1-3] at 9. The financing contract also provides under the heading "Returned Insurance Premiums and Service Contract Charges" that "[i]f we[, *i.e.*, Santander] get a refund on insurance or service contracts, or other contracts included in the cash price, we will subtract it from what you owe[, and o]nce all amounts owed under this contract are paid, any remaining refunds will be paid to you." [DE-1-3] at 12. The financing contract also states that plaintiff would be in default if she did "not pay any amount when it is due." [DE-1-3] at 12. The financing contract further specifies that if plaintiff "default[ed], or [Santander] believe[d] in good faith that [plaintiff was] not going to keep any of [her] promises, [Santander could] demand that [plaintiff] immediately pay[s] all that [she] owe[s]" and that Santander does not "have to give [plaintiff] notice that [it is] demanding or intend[s] to demand immediate payment of all that [she] owe[s]." *Id.* Additionally, the financing contract states that "[i]f [plaintiff] default[s], [Santander] may repossess the vehicle from [her] if [it] do[es] so peacefully." [DE-1-3] at 12. According to the financing contract, "[i]f any personal items are in the vehicle, [Santander] can store them for [plaintiff] and give [plaintiff] written notice at [her] last known address shown on [its] records within 15 days of discovering that [Santander has plaintiff's] personal items." *Id.* The financing contract provides that "[i]f [plaintiff] do[es] not ask for these items back within 31 days from the day [Santander] mail[s] or deliver[s] the notice to [her], [Santander] may dispose of them as applicable law allows." *Id.*

Plaintiff claims that "[i]n September 2021, a vehicle service warranty contract was canceled, generating a refund of $1,757.81 payable to [plaintiff (the "vehicle service warranty refund"), but that] Santander received this refund on or about September 26, 2021." [DE-1] at ¶ 11. Plaintiff notes that "Santander's internal account ledger [("plaintiff's Santander account records")] records this refund with the description: 'User allocated payment Warranty Refund'"

but plaintiff claims that "[t]his description is false[, because p]laintiff did not allocate this refund." *Id.* at ¶ 12 (citing [DE-1-3] at 25-26). Plaintiff charges that "[i]nstead of issuing the $1,757.81 refund to [p]laintiff, Santander unilaterally applied it to the loan's principal balance without [p]laintiff's consent and without adjusting the monthly payment amount or due date." *Id.* at ¶ 13.

Plaintiff claims that "[i]n accordance with the original payment schedule, [p]laintiff made her scheduled payment of $464.62 on October 10, 2021." *Id.* at ¶ 14. Plaintiff argues that "Santander's own payment ledger, produced in response to a [Consumer Financial Protection Bureau ("CFPB")] complaint, conclusively demonstrates the manufactured default [in that t]he ledger shows the 'User allocated' warranty credit of $1,757.81 on September 7, 2021." *Id.* at ¶ 15. Plaintiff further contends that Santander's "ledger contains contradictory entries: it records 'System allocated payment' of $464.62 for October and November 2021, while simultaneously assessing 'Late charge assessment' fees of $23.23 for those same months." *Id.* Plaintiff's position is that "[t]his internal contradiction proves the default was artificially created by Santander's accounting." *Id.* Plaintiff alleges that "[b]ased on this manufactured default, Santander sent a 'Notice of Intent to Accelerate' dated November 30, 2021, demanding $929.24---a figure not justified by its own ledger." *Id.* at ¶ 16.

Plaintiff allegedly has video footage showing that on January 27, 2022, at approximately 1:52 AM, Santander repossessed plaintiff's vehicle from the parking lot of her residence. *Id.* at ¶ 17; *cf. also* [DE-5]. Plaintiff notes that Santander's "'Notice of Our Plan to Sell Property' is dated January 27, 2022–the same day as the repossession." *Id.* at ¶ 18 (citing [DE-1-3] at 19). Plaintiff argues that this timing "fails to provide reasonable post-repossession notice as required by law." *Id.* Plaintiff claims that at the time her vehicle was repossessed, it contained personal property, "including tools, equipment, inventory, and personal items valued over $2,000." *Id.* at ¶ 19.

In a written response to plaintiff's CFPB complaint, Santander represented to plaintiff that "[o]n January 27, 2022, you requested the release of your personal property and were informed of the process required; however, the call was disconnected before the recording and release was completed." [DE-1-3] at 4. In this response, Santander further acknowledged that plaintiff's personal property was disposed of on March 27, 2022 and never returned to plaintiff. *Id.*

Plaintiff explains that she had worked as an independent contractor for Uber and Lyft and that in the six months prior to the vehicle repossession, she had generated gross earnings totaling $33,593.61. *Id.* at ¶ 20. Plaintiff claims that after her vehicle was repossessed she "lost this income stream, resulting in $78,385.16 in lost gross earnings over 14 months." *Id.* In an "Explanation of Calculation of Surplus or Deficiency" letter, Santander represented that it disposed of plaintiff's vehicle on March 31, 2022, but that after applying the proceeds of the sale, plaintiff still owed Santander $11,488.74. [DE-1-3] at 21-22.

Plaintiff alleges that "Santander has reported and continues to report the account to the three national credit reporting agencies (Equifax, Experian, and Trans Union) [(the "credit reporting agencies")] as a repossession and charge-off." *Id.* at ¶ 22. Plaintiff represents that "[f]rom 2022 through 2025, [p]laintiff disputed this inaccurate information multiple times directly with Santander and with the credit reporting agencies[, who in turn] notified Santander of these disputes." *Id.* at ¶ 23. Plaintiff further contends that "Santander failed to conduct a reasonable investigation and continues to report the inaccurate information." *Id.* at ¶ 24.

Plaintiff concludes her complaint by explaining that on November 21, 2025, she "sent a formal, time-sensitive demand via Certified Mail to Santander's Office of General Counsel via registered agent, providing notice of the claims and wrongful conduct alleged [in the complaint]," but that despite U.S. Postal Service tracking confirmation that the letter was delivered on

November 24, 2025, "Santander did not remedy its conduct." *Id.* at ¶ 25.

**B. Jurisdiction**

Plaintiff alleges (i) federal question jurisdiction under 28 U.S.C. §1331, and specifically under the FCRA and the ECOA (*see* [DE-1] at ¶ 3); and (ii) diversity jurisdiction under 28 U.S.C. §1332, because plaintiff is a citizen of North Carolina and Santander is an entity incorporated in Texas, and the amount in controversy exceeds $75,000 (*see id.* at ¶ 4). Plaintiff also contends, regarding her claims under state law, that the court has supplemental jurisdiction under 28 U.S.C. §1367. *Id.* at ¶¶ 5-6.

**C. Relief requested**

Plaintiff seeks actual and compensatory damages in the amount of $97,392.97; as well as compensation for emotional distress; statutory damages under the FCRA and the ECOA; treble damages under N.C. Gen. Stat. § 75-16; punitive damages and various forms of equitable relief; a declaratory judgment that "the manufactured default is invalid," "[t]he repossession was wrongful and a breach of the peace," and "Santander's credit reporting is inaccurate"; pre-judgment and post-judgment interest; the "costs of this action"; and "[a]ny other relief the Court deems just and proper." *See id.* at ¶¶ 69-78.

## II. APPLICABLE LEGAL STANDARDS

After allowing a party to proceed *in forma pauperis*, as here, the court must conduct a frivolity review of the case pursuant to 28 U.S.C. § 1915(e)(2)(B). In such a review, the court must determine whether the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from an immune defendant, and is thereby subject to dismissal. 28 U.S.C. § 1915(e)(2)(B); *see also Denton v. Hernandez*, 504 U.S. 25, 27 (1992)

(providing standard for frivolity review). A case is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

In evaluating frivolity specifically, the court holds a *pro se* plaintiff's pleadings to "less stringent standards" than those drafted by attorneys. *White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989). Nonetheless, the court is not required to accept a *pro se* plaintiff's contentions as true. *Denton*, 504 U.S. at 32. The court may "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327. Such baseless claims include those that describe "fantastic or delusional scenarios." *Id.* at 328. Provided that a plaintiff's claims are not clearly baseless, the court must weigh the factual allegations in plaintiff's favor in its frivolity analysis. *Denton*, 504 U.S. at 32. The court must read the complaint carefully to determine if a plaintiff has alleged specific facts sufficient to support the claims asserted. *White*, 886 F.2d at 724.

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading that states a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction . . . [and] a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1)-(2). The factual allegations in the complaint must create more than a mere possibility of misconduct. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Likewise, a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)) (alterations in original) (internal quotation marks omitted).

A court may also consider subject matter jurisdiction as part of the frivolity review. *See Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) ("Determining the question of subject matter jurisdiction at the outset of the litigation is often the most efficient procedure."); *Hill v. Se. Reg'l Med. Ctr.,* No. 7:19-CV-60-BO, 2019 WL 7041893, at *2 (E.D.N.C. Oct. 21, 2019), *mem. & recomm. adopted*, No. 7:19-CV-60-BO, 2019 WL 7163434 (E.D.N.C. Dec. 20, 2019), *aff'd*, 818 F. App'x 261 (4th Cir. 2020) (discussing the lack of federal question jurisdiction and diversity jurisdiction during frivolity review as a basis for dismissal). "Federal courts are courts of limited jurisdiction and are empowered to act only in those specific instances authorized by Congress." *Bowman v. White*, 388 F.2d 756, 760 (4th Cir. 1968). The presumption is that a federal court lacks jurisdiction in a particular case unless jurisdiction is affirmatively demonstrated. *Lehigh Min. & Mfg. Co. v. Kelly*, 160 U.S. 327, 337 (1895). The burden of establishing subject matter jurisdiction rests on the party invoking jurisdiction, here the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) ("The burden of proving subject matter jurisdiction . . . is on the plaintiff, the party asserting jurisdiction."). The complaint must affirmatively allege the grounds for jurisdiction. *Bowman*, 388 F.2d at 760. If the court determines that it lacks subject-matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

## III. ANALYSIS

Having granted plaintiff's application to proceed *in forma pauperis*, the court must now undertake the frivolity review of this case, pursuant to 28 U.S.C. § 1915(e)(2)(B). Under § 1915(e)(2)(B), a court shall dismiss a case if the action is: "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

## A. Application and accounting of refunds and payments

As several of plaintiff's claims appear to be premised on the allegation that Santander erred in its application and accounting of the service warranty refund and other payments, the undersigned considers this allegation as a threshold matter.

### 1. Vehicle service warranty refund

Plaintiff appears to allege that when her vehicle service warranty contract was canceled, the resulting refund should have been either (i) paid to her directly; or (ii) used to offset monthly payments under her financing contract. *See* [DE-1] at 3. Plaintiff represents that a refund under the vehicle service warranty contract was received by Santander in September 2021. *See id.* at ¶ 11 ("In September 2021, a vehicle service warranty contract was canceled, generating a refund of $1,757.81 payable to [p]laintiff[, and] Santander received this refund on or about September 26, 2021."); *see also* [DE-1-3] at 14.

The Fourth Circuit has held that "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016) (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 233-35 (4th Cir. 2004)); *see also Doriety for Est. of Crenshaw v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024) ("[I]f the plaintiff adopts the contents of an integral and authentic document, a court can credit 'the document over conflicting allegations in the complaint.'") (quoting *Goines*, 822 F.3d at 167).

The financing contract, into which plaintiff represents she entered with defendant ([DE-1] at 3) and which she attaches to her complaint ([DE-1-3] at 9-13), provides that "[i]f [Santander] get[s] a refund on insurance or service contracts, or other contracts included in the cash price,

[Santander] will subtract it from what [plaintiff] owe[s]," *i.e.*, the principal amount of the loan ([DE-1-3] at 12). Plaintiff's Santander account records indicate that on September 7, 2021, Santander deducted $1,757.81 from plaintiff's principal balance under the annotation "[u]ser allocated payment warranty refund." *See id.* at 25-26. Plaintiff has not pointed to any contractual provision or otherwise alleged facts supporting her position that the vehicle service warranty refund should have been paid to her directly or applied to her monthly payments.

Under North Carolina law,

> [a person] who signs a paper writing is under a duty to ascertain its contents, and in the absence of a showing that [s]he was willfully misled or misinformed by the defendant as to these contents, or that they were kept from [her] in fraudulent opposition to [her] request, [s]he is held to have signed with full knowledge and assent as to what is therein contained.

*Williams v. Williams*, 220 N.C. 806, 809-10, 18 S.E.2d 364, 366 (1942).

Accordingly, contrary to plaintiff's assertions, she preemptively agreed to the application of the vehicle service warranty refund, when she signed the financing contract. *See* [DE-1] at 3. Plaintiff's contention that she "did not allocate this funding" and that "Santander unilaterally applied it to the loan's principal balance without [p]laintiff's consent" (*id.*) are contradicted by the express language of the financing contract.

**2. Other entries**

Plaintiff additionally claims that plaintiff's Santander account records show "contradictory entries" and an "artificially created" default as evidenced by the fact that the record reports (i) "the 'User allocated' warranty credit of $1,757.81 on September 7, 2021; and "'System allocated payment' of $464.62 for October and November 2021, while simultaneously assessing 'Late charge assessment' fees of $23.23 for those same months." [DE-1] at 3 (citing [DE-1-3] at 25-26).

Plaintiff's allegations are flatly contradicted by the account records she cites. *See* [DE-1-3] at 25. Specifically, plaintiff's Santander account records document (i) a "System allocated payment' of $464.62" on August 25, 2021; (ii) a "User allocated payment" of $1,757.81 on September 7, 2021; (iii) a "Late charge assessment" of $23.23 on September 26, 2021; (iv) a "System allocated payment" of $464.62 on October 10, 2021; (v) a "Late charge assessment" of $23.23 on November 26, 2021; and (vi) a "Late charge assessment" of $23.23 on December 26, 2021. *Id.* at 25-26.

Accordingly, contrary to plaintiff's assertions, plaintiff's Santander account records do not show a "System allocated payment" of $464.62 for November 2021, nor do they include a "Late charge assessment" of $23.23 for October 2021. *See* [DE-1-3] at 25. While plaintiff believes that her warranty refund should have offset her monthly payments, there is no contractual or other basis supporting this position for the reasons discussed above. Plaintiff's Santander account records therefore demonstrate that between August and December 2021, the only monthly payments plaintiff made were in August and October, and there were no late charge assessments for those months. *See id.* at 25.

In sum, plaintiff has not identified any errors in the application or accounting of her payments in Santander's records and any claims based on the presence of such errors must fail.

**B. Federal law claims**

**1. FCRA claim under 15 U.S.C. § 1681s-2(b)[1]**

Plaintiff claims that she "disputed the accuracy of the repossession reporting with the

[1] Plaintiff also appears to list 15 U.S.C. § 1692 in reference to her FCRA claim in her jurisdictional allegations. *See* [DE-1] at 1. 15 U.S.C. § 1692 provides congressional findings and declaration of purpose for the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff does not otherwise reference or allege a claim under 15 U.S.C. § 1692. Accordingly, to the extent that plaintiff intended to assert an independent claim under 15 U.S.C. §

nationwide consumer reporting agencies, which notified Santander, triggering its duties under § 1681 s-2(b)" and that "Santander failed to conduct a reasonable investigation, failed to review all relevant information, and continues to report inaccurate information." [DE-1] at 6.

Plaintiff also argues that her "claim is timely filed" because "[p]laintiff did not discover, and could not have reasonably discovered through due diligence, that the 'User allocated' ledger entry was a fabricated misrepresentation constituting an FCRA violation until she conducted legal research and understood its significance in October 2025," and the "statute of limitations is therefore tolled under the discovery rule." *Id.*

Under 15 U.S.C. § 1681s-2(b)(1):

> when a furnisher of information to [the credit reporting agencies] is notified of a credit dispute [by a credit reporting agency], it must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the [CRA] . . . ," and "report the results of the investigation to the [CRA]" within thirty days of being notified of the dispute.

*Mavilla v. Absolute Collection Serv.*, 539 F. App'x 202, 208 (4th Cir. 2013) (quoting 15 U.S.C. § 1681s-2(b)(1), (2)).

The statute of limitations for claims under 15 U.S.C. § 1681s-2(b)(1) is "2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability;" or "5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S. Code § 1681p.

Courts in this circuit have interpreted this language to mean that "[t]he limitations period begins to run when a party knows or should know, through the exercise of due diligence, that a cause of action might exist." *Croft v. Bayview Loan Servicing, LLC*, 166 F. Supp. 3d 638, 641

---

1692 any such claim would fail to state a claim upon which relief can be granted due to deficient pleading. *See* Fed. R. Civ. P. 8(a).

(D.S.C. 2016) (citing *Tidewater Fin. Co. v. Williams*, 498 F.3d 249, 260 n. 11 (4th Cir. 2007)).

Plaintiff alleges that she disputed the allegedly inaccurate information with the credit rating agencies beginning in 2022 and that the credit reporting agencies "notified Santander of these disputes." [DE-1] at 5. Plaintiff also attaches as an exhibit to her complaint a letter from Santander dated July 12, 2022, responding to plaintiff's CFPB request and advising plaintiff that "[b]ased on a thorough review of your account, no update will be made to the information being reported." [DE-1-3] at 4. This letter should have put plaintiff on notice of any violations, which are the subject of her instant complaint. *Cf. Croft v. Bayview Loan Servicing, LLC*, 166 F. Supp. 3d 638, 641–42 (D.S.C. 2016) ("Plaintiff knew or should have known of the alleged FCRA violation at the latest when she received Defendant's October 30, 2012, letter refusing to remove the foreclosure entry from her credit report.").

Yet plaintiff argues that the two year statute of limitations should have been tolled because "[p]laintiff did not discover, and could not have reasonably discovered through due diligence, that the 'User allocated' ledger entry was a fabricated misrepresentation constituting an FCRA violation until she conducted legal research and understood its significance in October 2025." [DE-1]. This argument appears to reason that the statute of limitations should have been tolled based on plaintiff's ignorance of the relevant legal principles. *Id.* Courts have consistently rejected this theory of tolling. *Ott v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 661 (4th Cir. 2018) ("Ignorance of the law does not justify tolling, even when a party does not have legal representation."); *Johnson-El v. Mitchell*, No. 3:23-CV-00628-MR, 2024 WL 693530, at *3 (W.D.N.C. Feb. 20, 2024) ("Ignorance of the law is no excuse for Plaintiff's failure to file his Complaint within the limitations period."), *aff'd*, No. 24-6230, 2024 WL 3220319 (4th Cir. June 28, 2024) (citations omitted); *Scott v. Hudgins*, No. 5:08-CV-00137-GCM, 2024 WL 349271, at

*2 (W.D.N.C. Jan. 30, 2024), ("[I]gnorance of the law is no excuse for Plaintiff's failure to state a claim for relief before the limitations periods expired."), *aff'd*, No. 24-6144, 2024 WL 3580506 (4th Cir. July 30, 2024).

Plaintiff's allegations show that she discovered the alleged violation that is the basis for her liability in 2022 and yet did not file the instant complaint until December of 2025, more than two years later. Accordingly, plaintiff's claim under 15 U.S.C. § 1681s-2(b) is timebarred, and the undersigned RECOMMENDS that such claim be DISMISSED. *See Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006) ("[I]n evaluating a complaint filed *in forma pauperis* pursuant to § 1915, a district court may consider a statute of limitations defense sua sponte when the face of the complaint plainly reveals the existence of such defense.") (citing *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 953-54 (4th Cir. 1995).

**2. ECOA claim under 15 U.S.C. § 1691**

Plaintiff claims that "[a]s an existing account holder, [p]laintiff is an 'applicant' under ECOA and Regulation B"; "Santander's repossession of the vehicle constituted an 'adverse action' under 15 U.S.C. § 1691(d)(6)"; and "Santander failed to provide a statement of specific reasons for this adverse action as required by 15 U.S.C. § 1691(d)(2)." [DE-1] at 6.

15 U.S.C. § 1691(d)(2) requires that "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2). 15 U.S.C. § 1691(d)(6) defines an "adverse action" to mean:

> a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.

15 U.S.C. § 1691(d)(6).

The Federal Reserve Board has provided regulations, which further clarify the meaning of "adverse action." *See* 12 C.F.R. § 202.2(c)(1),(2); *see also Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 976 n.3 (7th Cir. 2004) ("The ECOA delegated to the Federal Reserve Board the power to implement regulations in furtherance of carrying out the Act's purpose, . . . [and t]hese regulations, known as 'Regulation B,' are found under 12 C.F.R. §§ 202.1–202.15."). Under these regulations, "[a]ny action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account" is not to be considered an adverse action. 12 C.F.R. § 202.2(c)(2)(ii).

As noted above, the financing contract provided that plaintiff would be in default if she did "not pay any amount when it is due." [DE-1-3] at 12. Santander's Notice of Intent to Accelerate and Requirement of Strict Compliance ([DE-1-3] at 17), which plaintiff incorporated into her complaint, advised plaintiff that she was "now in default under [her] contract" because she was "late in making [her] payments" and that if plaintiff did not pay $929.24[2] by December 14, 2021, Santander would "accelerate the maturity of the outstanding debt under the [financing] contract and declare it immediately due and payable" and that Santander would repossess her vehicle (*id.*).

As the acceleration of plaintiff's loan and the repossession of plaintiff's vehicle were taken in the context of plaintiff's default, these actions do not represent an adverse action under the ECOA. *See Southern v. Golden Gate Auto Sales, Inc.*, 487 F. Supp. 2d 951, 954 (N.D. Ill. 2006) (finding that the lender's "repossessing and continuing to hold [plaintiff's] vehicle do not, however, constitute an 'adverse action' under the ECOA" where "the repossession and any

[2] The undersigned notes that $929.24 is equal to the two payments of $464.62, which plaintiff failed to make in September and November, respectively, of 2021 according to plaintiff's Santander account records. *See* [DE-1-3] at 17, 25.

continued action against the vehicle was taken 'in connection with' [plaintiff's] delinquency."); *Haynes v. Bank of Wedowee*, 634 F.2d 266, 272 (5th Cir. 1981) (finding when a party "was in default at the time her note was accelerated[,] . . . the acceleration was not adverse action."); *Adams v. Bank of Am., N.A.*, 237 F. Supp. 3d 1189, 1210 (N.D. Ala. 2017) ("[W]hen a debtor is in default at the time her note is accelerated, that acceleration is not an adverse action.") (citing *Haynes*, 634 F.2d at 272).

In sum, as plaintiff's vehicle repossession was not an adverse action under 15 U.S.C. § 1691(d)(2), plaintiff has failed to state a claim for relief under the ECOA, and the undersigned RECOMMENDS that such claim be DISMISSED.

**C. State law claims**

**1. Unjust enrichment**

With respect to her unjust enrichment claim, plaintiff claims that "Santander received and retained benefits, including the $1,757.81 refund and proceeds from the sale of [p]laintiff's vehicle"; "[t]hese benefits were conferred at [p]laintiff's expense" and "[i]t would be inequitable for Santander to retain these benefits." [DE-1] at 6-7.

For the reasons discussed above, plaintiff has failed to show any manner in which the repossession and sale of her vehicle violated her financing contract or applicable law. Furthermore, according to the Explanation of Calculation of Surplus or Deficiency letter, plaintiff's vehicle was sold on March 31, 2022, and plaintiff does not contest this fact. [DE-1-3] at 21. Santander's CFPB complaint response letter dated July 12, 2022, also references the sale of plaintiff's vehicle. [DE-1-3] at 3-4.

Under North Carolina law,[3] unjust enrichment claims are subject to a three-year statute of limitations. *See Martin Marietta Materials, Inc. v. Bondhu, LLC*, 772 S.E.2d 143, 146 (N.C. Ct. App. 2015) ("It is clear that the statute of limitations for unjust enrichment is three years.") (citing *Stratton v. Royal Bank of Canada*, 712 S.E.2d 221, 228 (N.C. Ct. App. 2011)); *Humana, Inc. v. Ameritox, LLC*, 267 F. Supp. 3d 669, 676 (M.D.N.C. 2017) (same).

Plaintiff's complaint was filed on December 12, 2025, more than three years after her vehicle was sold and after the date of the Explanation of Calculation of Surplus or Deficiency letter in the Spring of 2022. [DE-1-3] at 21. Accordingly, plaintiff's unjust enrichment claim is additionally untimely, and the undersigned RECOMMENDS that such claim be DISMISSED.

**2. Constructive trust**

Plaintiff argues that "Santander obtained the proceeds from the sale of [p]laintiff's vehicle through wrongful conduct, including manufacturing a default," and that "[e]quity and good conscience require Santander to hold these proceeds in constructive trust for [p]laintiff's benefit." [DE-1] at 7.

As discussed above, the undersigned finds plaintiff's allegations of a "manufactur[ed] . . . default" (*id.*) to be meritless. Accordingly, plaintiff has failed to allege any viable legal basis for a constructive trust, and the undersigned RECOMMENDS that any claim related to such request be DISMISSED.

**3. Accounting**

---

[3] Plaintiff asserts North Carolina law with respect to her state law claims. As no party has yet argued for the application of any other state law to these claims, the undersigned will apply North Carolina law for purposes of the instant analysis. W*iener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 782 (4th Cir. 2023) "Where neither party argues that the forum state's choice of law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law." (quoting *Echo, Inc. v. Whitson Co.*, 52 F.3d 702, 707 (7th Cir. 1995)); *see also id.* at 781-82 ("Because both parties consented to the choice of North Carolina law to govern this action and AXA waived any argument that another state's law should be applied, the district court erred when it engaged in its own choice-of-law analysis and decided to apply [another state's] law.").

Plaintiff claims that "[t]he precise amounts Santander obtained from the sale of the vehicle and its application of funds are within its sole knowledge" and "[a]n accounting is necessary to determine the amounts wrongfully obtained." [DE-1] at 7.

For the reasons discussed above, the undersigned has not found that plaintiff has not alleged sufficient facts to indicate that Santander wrongfully obtained anything from plaintiff. Additionally, plaintiff incorporates Santander's "Explanation of Calculation of Surplus or Deficiency" letter into her complaint. [DE-1-3] at 21. Plaintiff has not alleged any manner in which the figures in this document including the "[g]ross proceeds from the sale of the [v]ehicle" are incomplete or inaccurate. *See id.* Accordingly, plaintiff has failed to state a claim for relief that would require an additional accounting of the precise amounts Santander obtained from the sale of the vehicle, and the undersigned RECOMMENDS that any claim related to such request be DISMISSED.

**4. Common law fraud**

Plaintiff brings a claim for common law fraud, alleging "[t]he 'User allocated' ledger entry constitutes a material misrepresentation of fact[, and] . . . Santander made this representation knowing it was false or with reckless disregard for the truth, intending to create a false default, as evidenced by its own contradictory payment ledger." [DE-1] at 8.

Under North Carolina law, a claim for fraud includes the following elements: "(1) [a] false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party." *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 798 (E.D.N.C. 2019) (gathering cases), *aff'd sub nom.*, *Fitzgerald Fruit Farms, LLC v. Harris*, 858 F. App'x 625 (4th Cir. 2021). As noted above, because plaintiff contractually agreed to have any "refund on . . .

service contracts, . . . subtract[ed] . . . from what [she] owe[d]" Santander ([DE-1-3] at 12), Santander did not make a false statement when it represented that plaintiff as the "user" agreed to have her vehicle service warranty refund applied in accordance with the financing contract (*see id.* at 25). Accordingly, plaintiff's fraud claim is without merit, and the undersigned RECOMMENDS that such claim be DISMISSED.

**5. Wrongful Repossession**

As plaintiff appears to acknowledge ([DE-1] at 8), under North Carolina law, in the event of a default, a secured party may repossess a vehicle without a judicial order, if such repossession can be accomplished without a "breach of the peace." N.C. Gen. Stat. § 25-9-609. Plaintiff claims that "[r]epossessing a vehicle at approximately 1:52 AM from the parking lot of [p]laintiff's residence constituted a breach of the peace." [DE-1] at 8. Yet plaintiff cites no case law or other authority supporting this conclusory statement.

When considering whether a repossession, in which there was no confrontation, breaches the peace, North Carolina courts have employed a five-factor balancing test: "(1) where the repossession took place, (2) the debtor's express or constructive consent, (3) the reactions of third parties, (4) the type of premises entered, and (5) the creditor's use of deception." *Giles v. First Virginia Credit Servs., Inc.*, 149 N.C. App. 89, 100, 560 S.E.2d 557, 565 (2002) (quoting *Davenport v. Chrysler Credit Corp.*, 818 S.W.2d 23, 29 (Tenn. Ct. App. 1991)).

Here, these factors support a finding that Santander's actions did not breach the peace. A North Carolina Court of Appeals found circumstances even more disruptive and invasive than those described in plaintiff's case did not breach the peace. Specifically, in that case:

> [a professional recovery company] went onto plaintiffs' driveway in the early morning hours, when presumably no one would be outside, . . . did not enter into plaintiffs' home or any enclosed area[,] . . . [c]onsent to repossession was expressly

> given in the contract with [the defendant] signed by [the plaintiff], . . . a third party . . . was awakened by the noise of [the professional recovery company's] truck, [but] did not speak with anyone from [the professional recovery company[, nor did he go outside until [the professional recovery company] had departed with the [the plaintiff's] automobile [and] . . . there is no evidence, nor did plaintiffs allege, that [defendant] or [the professional recovery company] employed any type of deception when repossessing the automobile.

*Giles*, 149 N.C. App. at 102, 560 S.E.2d at 566.

Similarly, here, according to plaintiff's allegations, Santander repossessed the vehicle from plaintiff's parking lot at night, with no indication that anyone else was outside, and there is no claim that Santander entered plaintiff's home or any enclosed area. [DE-1] at 4, 8. Plaintiff does not allege that Santander spoke with or interacted with anyone during the course of the repossession or that they otherwise caused disruption. *See id*. The recourse to repossession was expressly provided for in the financing contract ([DE-1-3] at 12), and rather than engaging in any type of deceit or subterfuge, Santander clearly advised plaintiff on November 30, 2021, that it would "repossess the vehicle" if plaintiff failed to pay the amounts she owed ([DE-1-3] at 17).

Accordingly, plaintiff has failed to state a claim for a violation of N.C. Gen. Stat. § 25-9-609, and the undersigned RECOMMENDS that any such claim be DISMISSED.

**6. Failure to provide notice of disposition**

Plaintiff, citing N.C. Gen. Stat. § 25-9-611, claims that "Santander has admitted the notice is dated January 27, 2022, the same day as the repossession" and "[a] same-day notice fails, as a matter of law, to provide the notification required by statute." [DE-1] at 9.

Pursuant to N.C. Gen. Stat. § 25-9-610, "[a]fter default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing." N.C. Gen. Stat. § 25-9-610. N.C. Gen. Stat. § 25-9-611 provides that "a secured party that disposes of [nonperishable] collateral under G.S.

25-9-610 shall send to [the debtor] a reasonable signed notification of disposition." N.C. Gen. Stat. § 25-9-611(b). N.C. Gen. Stat. § 25-9-612 provides that before disposition of collateral, a secured party must provide notice (i) within a "reasonable time" in the case of consumer transactions or (ii) "10 days or more before the earliest time of disposition set forth in the notification" in the case of nonconsumer transactions.

N.C. Gen. Stat. § 25-9-102 defines a "consumer transaction" to be one where "(i) an individual incurs an obligation primarily for personal, family, or household purposes, (ii) a security interest secures the obligation, and (iii) the collateral is held or acquired primarily for personal, family, or household purposes." N.C. Gen. Stat. § 25-9-102(a)(26). While "nonconsumer transactions" are not defined by statute, North Carolina courts in similar circumstances have interpreted similar terms in contrast to their complementary antonyms. *See L.C. Williams Oil Co. v. NAFCO Capital Corp.*, 130 N.C. App. 286, 289-90, 502 S.E.2d 415, 417-18 (1998) ("[T]he adjective 'consumer' in G.S. § 22B-3 operates to describe that which is used by 'a natural person for family, household, personal or agricultural purposes[,]' . . . [w]e therefore conclude that a 'non-consumer loan' is one *not* extended to a natural person, and *not* used for 'family, household, personal or agricultural purposes.'" (quoting Black's Law Dictionary 937 (6th ed. 1990)). Accordingly here, a "nonconsumer transaction" should reasonably be construed to represent a transaction where (i) an individual does *not* incur an obligation primarily for personal, family, or household purposes, (ii) a security interest secures the obligation, and (iii) the collateral is *not* held or acquired primarily for personal, family, or household purposes. N.C. Gen. Stat. § 25-9-102 (a)(26).

Plaintiff indicates that she used her vehicle to "earn[] income as an independent contractor for Uber and Lyft," ([DE-1] at 4) suggesting that the purchase of her vehicle was primarily for a

business purpose and therefore a nonconsumer transaction subject to the 10 day notice requirement under N.C. Gen. Stat. § 25-9-612.

Plaintiff acknowledges that Santander's Notice of Our Plan to Sell Property letter is dated January 27, 2022. *See* [DE-1] at 4; [DE-1-3] at 19. Plaintiff emphasizes that this date is the same day as the repossession of her vehicle. [DE-1] at 4. Yet this fact is irrelevant for N.C. Gen. Stat. § 25-9-610 *et seq.*, which governs the *disposition*, not the *repossession*, of collateral. Santander's Notice of Our Plan to Sell Property letter advises plaintiff that it would sell her vehicle at a private sale sometime after February 10, 2022. [DE-1-3] at 19. According to Santander's Explanation of Calculation of Surplus or Deficiency letter, which plaintiff incorporates into her complaint, plaintiff's vehicle was not sold until March 31, 2022, which was 63 days or nine weeks after the date of the Notice of Our Plan to Sell Property letter.

Accordingly, plaintiff has failed to allege any facts suggesting that she failed to receive notice regarding the disposition of her vehicle within the legally required time or in a reasonable manner, and the undersigned RECOMMENDS that plaintiff's claim for failure to provide notice of disposition be DISMISSED.

**7. Conversion**

Plaintiff alleges that she "owned personal property inside the vehicle[,] . . . Santander admitted in writing that [p]laintiff demanded the return of her property, the call was disconnected, and the property was later disposed of." [DE-1] at 9. Plaintiff argues that "[t]his constitutes an exercise of unauthorized dominion and control" and that "Santander's actions excluded [p]laintiff's ownership rights." *Id.*

Under North Carolina law, the tort of conversion is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the

alteration of their condition or the exclusion of an owner's rights." *Peed v. Burleson's, Inc.*, 94 S.E.2d 351, 353 (N.C. 1956) (citing 89 C.J.S., Trover & Conversion, s 1). A viable conversion claim consists of two elements: "ownership in the plaintiff and wrongful possession or conversion by the defendant." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 723 S.E.2d 744, 747 (N.C. 2012). A claim for conversion in North Carolina is subject to a three year statute of limitations. N.C. Gen. Stat. § 1-52(4); *see also Mills v. Wachovia Bank NA*, 191 N.C. App. 399, 663 S.E.2d 14 (2008) ("There is a three year statute of limitations in this state for conversion.") (citing N.C. Gen. Stat. § 1-52(4)).

Plaintiff alleges that her personal property was disposed of on March 27, 2022. [DE-1] at 4 (citing [DE-1-3] at 3-4). Plaintiff became aware of this conversion no later than July 12, 2022, the date of Santander's response to plaintiff's CFPB complaint. *See* [DE-1-3] at 3. Plaintiff did not file her complaint in this action until December 12, 2025. Accordingly, plaintiff's conversion claim is untimely and the undersigned RECOMMENDS that such claim be DISMISSED.

**8. UDTPA, N.C. Gen. Stat.§ 75-1.1,**

Plaintiff contends that "Santander's conduct as described–fabricating a ledger entry to manufacture a default, wrongfully repossessing a vehicle at 1:52 AM, converting personal property, and falsely reporting credit information–constitutes unfair and deceptive acts in or affecting commerce." [DE-1] at 7. Plaintiff argues that "[t]his pattern of conduct offends established public policy, is immoral, unethical, oppressive, and causes substantial injury to consumers." *Id.*

Under North Carolina's UDTPA, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 583 (E.D.N.C. 2020) (quoting N.C.

Gen. Stat. § 75-1.1(a)) (alteration in original). To establish a violation of UDTPA, "a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Essentia Ins. Co. v. Stephens*, --- F. Supp. 3d ---, No. 5:20-CV-175-FL, 2021 WL 1206582, at *15 (E.D.N.C. Mar. 30, 2021) (quoting *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001)). "'A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers' . . . [while a] practice is deceptive if it has the capacity or tendency to deceive.'" *Walker v. Fleetwood Homes of N. Carolina, Inc.*, 653 S.E.2d 393, 399 (N.C. 2007) (quoting *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981)).

Plaintiff's allegation of manufacturing a default through false accounting has been rejected for the reasons discussed above. Plaintiff has not cited any legal basis preventing Santander from "repossessing" the vehicle pursuant to provisions in the financing contract. *Cf.* [DE-1] at 8; [DE-1-3] at 12.

Additionally, for the reasons discussed above, as plaintiff's complaint does not plausibly allege any errors in Santander's furnishing of information to credit reporting agencies, plaintiff's claim that Santander "falsely report[ed] credit information" is without merit.

As plaintiff's UDTPA claim of "converting personal belongings"[4] ([DE-1] at 8), is not subject to the three year statute of limitations applicable to her conversion claim, such an allegation could be considered in the context of a UDTPA claim. *See* N.C. Gen. Stat. § 75-16.2 (providing a four year statute of limitations for claims under the UDTPA); *see also Bland v. Carolina Lease*

[4] The undersigned notes that unlike plaintiff's claim for conversion discussed below, which has three-year, statute of limitations, claims under the UDTPA have a four-year statute of limitations. *See* N.C. Gen. Stat. § 75-16.2.

*Mgmt. Grp.*, LLC, No. 23-1367, 2024 U.S. App. LEXIS 11110, at *4 (4th Cir. May 7, 2024) ("North Carolina case law indicates that the UDTPA statute of limitations applies to a UDTPA claim regardless of whether that claim is predicated on a different substantive claim governed by a different statute of limitations.") (citing *Shepard v. Ocwen Fed. Bank, FSB*, 361 N.C. 137, 638 S.E.2d 197, 200 (N.C. 2006)). Yet plaintiff only claims $2,250 in damages for "converted personal property." *See* [DE-1] at 10. Even if treble damages under N.C. Gen. Stat. § 75-16 were applied to this amount, it would still fall far below the amount in controversy required for diversity jurisdiction in federal court. The Fourth Circuit has dictated that when the amount in controversy falls below the diversity jurisdiction threshold through dismissal of certain claims, the district court should apply its discretion on whether to retain jurisdiction over the case analogous to the decision to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c). *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).

When making this discretionary determination, the district court should consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.* (citing *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7, 98 L. Ed. 2d 720, 108 S. Ct. 614 (1988)).

As the instant case has not significantly progressed and is still subject to the instant frivolity review, the undersigned finds that declining to retain jurisdiction over this claim does not significantly prejudice either party's convenience or fairness. Furthermore, the undersigned does not find that plaintiff's UDTPA claims implicate any underlying issues of federal policy. With respect to comity, another federal court in North Carolina has previously declined to exercise supplemental jurisdiction finding certain state law claims, including a claim under the UDTPA, present "complex and unsettled issues of North Carolina law which would be more appropriately

resolved by a North Carolina Court." *McCrimmon v. Mariner Fin. N. Carolina, Inc.*, 154 F. Supp. 3d 256, 259 (M.D.N.C. 2016) (quoting *McCullough v. Branch Banking & Trust Co.*, 844 F.Supp. 258, 261 (E.D.N.C. 1993)). Finally, given the very early stage of this case, the undersigned finds that considerations of judicial economy militate against retaining jurisdiction over this state law claim.

Accordingly, the undersigned RECOMMENDS that plaintiff's UDPTA claim related to Santander's disposal of her property be DISMISSED WITHOUT PREJUDICE and that all of plaintiff's other UDPTA claims be DISMISSED WITH PREJUDICE.

**D. Declaratory judgment**

Plaintiff seeks a declaratory judgment under 28 U.S.C. §§ 2201-2202 based on her claims that "[a]n actual and substantial controversy exists between the parties regarding: (a) the validity of the manufactured default; (b) the lawfulness of the repossession; (c) the accuracy of Santander's credit reporting; and ( d) Santander's right to retain sale proceeds." [DE-1] at 9.

"In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S. Code § 2201(a). Yet "the [Declaratory Judgment] Act does not impose a mandatory obligation upon the federal courts to make such declarations of rights [but rather affirms that] a district court's decision to entertain a claim for declaratory relief is discretionary." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.,* 139 F.3d 419, 421 (4th Cir. 1998). "[A] district court is obliged to rule on the merits of a declaratory judgment action when declaratory relief 'will serve a useful purpose in clarifying and settling the legal relations in issue,' and 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Volvo Const.*

*Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 594 (4th Cir. 2004) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

Here, as plaintiff's claims are either without merit or outside the court's original jurisdiction, the undersigned does not find a declaratory judgment would satisfy these requirements. *See id*. Accordingly, the undersigned RECOMMENDS that plaintiff's claim for a declaratory judgment be DISMISSED.

In sum, the undersigned RECOMMENDS that plaintiff's UDPTA claim related to Santander's disposal of her property ([DE-1] at 7-8) be DISMISSED WITHOUT PREJUDICE and that all of plaintiff's other claims [DE-1] be DISMISSED WITH PREJUDICE.

**ORDER ON MOTION FOR LEAVE TO MANUALLY FILE EXHIBIT**

In her motion for leave to submit multimedia evidence, plaintiff asks the court for "leave to submit a physical USB drive containing critical video evidence." [DE-5] at 1. Plaintiff indicates that the multimedia evidence represents a digital surveillance video file showing how "[d]efendant repossessed [p]laintiff's vehicle on January 27, 2022, at approximately 1:52 AM CST from the parking lot of her residence." [DE-5] at 1. For purposes of the instant frivolity review, the undersigned has already credited plaintiff's allegations that the repossession occurred at the time and in the manner alleged by plaintiff. *Cf. Denton*, 504 U.S. at 32 ("[T]he *in forma pauperis* plaintiff's factual allegations must be weighted in favor of the plaintiff.").[5] While the undersigned recommends dismissal of plaintiff's complaint for the reasons discussed herein, to the extent the

[5] At the same time, the undersigned has not accepted, nor is the court required to accept, the legal conclusions, which plaintiff draws from the facts she alleges. *See Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010) ("Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted.") (citing *Neitzke v. Williams*, 490 U.S. 319, 328–29, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989)).

court disagrees with this recommendation, plaintiff's multimedia evidence may be relevant at a future juncture of this case, at which point, it could be submitted at that time.

Accordingly, plaintiff's motion for leave to submit multimedia evidence [DE-5] is DENIED WITHOUT PREJUDICE.

## CONCLUSION

For the reasons set forth above, plaintiff's motion to proceed *in forma pauperis* [DE-2] is ALLOWED, and plaintiff's motion for leave to submit multimedia evidence [DE-5] is DENIED WITHOUT PREJUDICE.

Also for the reasons set forth above, the undersigned RECOMMENDS that plaintiff's UDPTA claim related to Santander's disposal of her property be DISMISSED WITHOUT PREJUDICE, and that all of plaintiff's other claims be DISMISSED WITH PREJUDICE.

IT IS DIRECTED that a copy of this Order and Memorandum and Recommendation be served on plaintiff or, if represented, her counsel. Plaintiff shall have until **September 30, 2026**, to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding**

**district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 14th day of September, 2026.

Brian S. Meyers
United States Magistrate Judge